[No. A110370. First Dist., Div. Four. Oct. 31, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
MAURICE POINDEXTER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of DISCUSSION, parts B. and C.

**COUNSEL**

Stephen B. Bedrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Jill M. Thayer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SEPULVEDA, J.**—Defendant, convicted of first degree murder (Pen. Code, § 187, subd. (a)),[1] contends that there was insufficient evidence to support the verdict.[2] Specifically, he argues that certain elements necessary to support lying-in-wait first degree murder[3] were not supported by sufficient evidence. This argument encompasses the issue of whether a "substantial period of watching and waiting," required for the related lying-in-wait special circumstance, is also required for first degree murder under a lying-in-wait theory. We find, as defendant argues, that a "substantial period of watching and waiting" is required for lying-in-wait first degree murder, but nevertheless conclude that the evidence was sufficient to support the verdict. We affirm the conviction.

---

[1] An enhancement for use of a firearm (Pen. Code, § 12022.53, subd. (d)) was found true; defendant was also convicted of possession of a firearm by an ex-felon (Pen. Code, § 12021, subd. (a)). All further section references are to the Penal Code.

[2] Defendant also contends on appeal that he was denied a fair trial due to witness misconduct, and that the prosecutor improperly commented upon his failure to present evidence.

[3] The jury was instructed on two theories of first degree murder: lying in wait and premeditation/deliberation.

## BACKGROUND

Victim Eric Johnson and his friend Erik Agreda stopped by the victim's apartment on the evening of July 19, 2003, so the victim could pick up some money. Agreda parked in the back of the victim's driveway on Fortune Way. While the victim went inside, Agreda stayed outside in the car. Agreda noticed there were several people in their mid-20's around a car in the area. When the victim came back outside, he told Agreda that someone was looking at him "kind of hard." Agreda saw defendant walking toward the victim, who was standing next to the passenger door of Agreda's car. The victim asked what was going on.

Agreda jumped out of his car and heard defendant say, "What you doing back there?" The victim replied that he lived there. Defendant said that something had "come up missing" back there; the victim indicated that he did not care, that he did not know anything about something missing, and that it was his house. Defendant said something to the effect of, "Oh, you don't care? Man, if you want to keep living here, man, stay here." (Not an exact quotation.)[4] Another witness, Mario Jacobs, testified that the last thing defendant said to the victim before leaving to get his shotgun was, "I'ma show you what I mean." While defendant and the victim were talking, Jacobs drove up in his car and asked the victim if everything was all right. They had been friends since elementary school. The victim told Jacobs that he was all right and to come back later. After defendant walked away, Jacobs told the victim to get in his car and leave.

Defendant walked away. Another man from the group nearby approached and said, "Don't trip E. He just don't know you," as though trying to calm down the situation. Defendant walked down Fortune Street and turned right onto Seminary Avenue. Within a minute of leaving, defendant returned with a shotgun. He carried the shotgun pointed down. He said something to the victim, who said, "It's not that serious. It's not that serious." Defendant then shot the victim three times, and ran off toward Seminary.

James Lyles testified that a day or two before the shooting, defendant asked him to watch a garbage can at Seminary and Foothill. Lyles looked inside and saw a sawed-off shotgun. Lyles believed that defendant sold drugs in the area,

---

[4] Agreda testified that after defendant said something had "come up missing" back there, the victim replied that he stayed there; defendant then said something like, "Man, if you want to keep living here, man . . . ." He admitted, however, that he had told the police a slightly different version, wherein he indicated that defendant said, "He was like, you want to keep living, stay here," or something to that effect.

and that he had his stash in the area of the driveway across from his father's home. The victim lived across the street from defendant's father.[5]

The victim was shot three times with a shotgun: One entry wound was in his rear thigh, another in the rear of his arm, and the third in his arm and chest. The shot that entered his chest was fatal. The shotgun was fired from between five and 10 feet away.[6]

Defendant was charged by information with murder (§ 187, subd. (a)), and with an enhancement for use of a firearm causing injury or death (§ 12022.53, subd. (d)). A second information charging possession of a firearm by a felon (§ 12021, subd. (a)) was consolidated with the murder charge. Defendant was convicted by jury of first degree murder and possession of a firearm by a felon, and the firearm allegation was found true. Defendant was sentenced to 50 years to life in state prison, consisting of 25 years to life for first degree murder, with a consecutive sentence of 25 years for the use enhancement; the sentence for felon in possession of a firearm was stayed pursuant to section 654. This timely appeal followed.

## DISCUSSION

### A. *Lying in Wait.*

The trial court instructed the jury on two theories of first degree murder: lying in wait and premeditation/deliberation. Defendant contends that insufficient evidence supports first degree murder under the theory of lying in wait, and that the trial court therefore erred in instructing on that theory. We disagree, but also find any error was harmless.

The trial court instructed on lying in wait, pursuant to CALJIC No. 8.25: "Murder which is immediately preceded by lying in wait is murder of the first degree. [¶] The term 'lying in wait' is defined as waiting and watching for an opportune time to act, together with a concealment by ambush or some other secret design to take the other person by surprise [even though the victim is aware of the murderer's presence]. The lying in wait need not continue for any particular period of time provided that its duration is such as to show a

---

[5] Lyles testified to these beliefs based upon his general observations. He admitted on cross-examination, however, that he had never personally observed defendant store drugs in the garbage can.

[6] The autopsy surgeon's testimony was not conclusive regarding the distance from which the shots were fired. He indicated on direct that they were fired from a distance of five to 10 feet away; on cross-examination, he indicated the distance could not be precisely determined without test-firing the weapon. He further indicated that one or all of the shots could have been fired from that distance, or from a closer range.

state of mind equivalent to premeditation or deliberation. [¶] [The word 'premeditation' means considered beforehand.] [¶] [The word 'deliberation' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.]'"

Defendant maintains that the evidence was insufficient to support the jury's finding of first degree murder on this theory. "The legal standard is a familiar one: 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]' " (*People v. Gurule* (2002) 28 Cal.4th 557, 630 [123 Cal.Rptr.2d 345, 51 P.3d 224] (*Gurule*).) The same rule applies to the review of circumstantial evidence. "The court must consider the evidence and all logical inferences from that evidence in light of the legal definition of lying in wait. [Citation.] But it is the jury, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] Therefore, an appellate court may not substitute its judgment for that of the jury. If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding. [Citations.]" (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138–1139 [17 Cal.Rptr.2d 375, 847 P.2d 55], italics omitted (*Ceja*).) Thus, in evaluating a claim of insufficiency of the evidence, the test is not whether we ourselves are convinced that the evidence proves the defendant guilty beyond a reasonable doubt, but whether sufficient substantial evidence supports the jury's conclusion that it does. (*In re Jose P.* (2003) 106 Cal.App.4th 458, 465–466 [130 Cal.Rptr.2d 810].) Only if it clearly appears "that upon no hypothesis whatever is there sufficient substantial evidence" to support the verdict may we reverse. (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

Defendant argues that " 'To prove lying in wait, the prosecution must prove there was a concealment of purpose, a substantial period of watching and waiting for a favorable or opportune time to act, and that immediately thereafter the defendant launched a surprise attack on an unsuspecting victim from a position of advantage,' " citing *Gurule, supra,* 28 Cal.4th at page 630 and *People v. Hardy* (1992) 2 Cal.4th 86, 163 [5 Cal.Rptr.2d 796, 825 P.2d 781] (*Hardy*). Specifically, defendant contends that the elements of waiting and watching for an opportune time to act, concealment by a secret design, and waiting for a substantial period of time, which he contends are required elements of first degree murder under a lying-in-wait theory, were not

supported by sufficient evidence. We focus on the element of "waiting for a substantial period of time."[7]

Defendant argues that under a lying-in-wait theory of first degree murder, the prosecution must prove that he waited for a *substantial* period of time. Respondent contends that this language is from the lying-in-wait special circumstance, which has more stringent requirements than lying-in-wait first degree murder. According to respondent, the substantial period of time requirement is only applicable in the lying-in-wait special circumstance, citing the definition of lying-in-wait first degree murder contained in CALJIC No. 8.25, and *People v. Moon* (2005) 37 Cal.4th 1, 22 [32 Cal.Rptr.3d 894, 117 P.3d 591] (*Moon*).[8] In order to resolve this disputed issue, we must review, and attempt to reconcile, several cases that have addressed the question in different contexts.

█ The definition of lying in wait, cited by defendant from *Gurule, supra,* 28 Cal.4th at page 630, has its origin in *People v. Morales* (1989) 48 Cal.3d 527, 557 [257 Cal.Rptr. 64, 770 P.2d 244] (*Morales*).[9] In *Morales*, the court addressed the issue of the lying-in-wait special circumstance. However, that same language, as defendant notes, has been cited as the definition of lying in wait for first degree murder purposes as well, in other cases. The issue of whether a "substantial period" of watching and waiting is required for lying-in-wait first degree murder was most directly discussed by the Supreme Court in *People v. Stanley* (1995) 10 Cal.4th 764, 795 [42 Cal.Rptr.2d 543, 897 P.2d 481] (*Stanley*). The defendant in *Stanley* was challenging the first

---

[7] We focus primarily on this element, but the same analysis regarding the correctly applicable law defining the elements of first degree murder under a lying-in-wait theory applies as well to the other elements cited from *Gurule, supra,* 28 Cal.4th at pages 629–630. The factors cited from *Gurule,* other than the substantial period of watching and waiting, are mentioned in CALJIC No. 8.25, although the language does not exactly track the cited language from *Gurule* (see fn. 13, *post*). Respondent specifically contends that the substantial period of watching and waiting requirement applies only to the lying-in-wait special circumstance, hence our focus on this issue.

[8] *Moon* dealt with both issues, the lying-in-wait special circumstance and first degree murder under a lying-in-wait theory. As *Moon* indicates, it focuses "on the special circumstance because it contains the more stringent requirements. [Citation.] If, as we find, the evidence supports the special circumstance, it necessarily supports the theory of first degree murder." (*Moon, supra,* 37 Cal.4th at p. 22.) Several Supreme Court decisions addressing sufficiency of the evidence issues, where both lying-in-wait first degree murder and the related special circumstance have been involved, have taken a similar approach.

[9] We reference that portion of *Morales* which indicates that an intentional murder, committed under circumstances which include (1) a concealment of purpose; (2) a substantial period of watching and waiting for an opportune time to act; and (3) a surprise attack following immediately on an unsuspecting victim from a position of advantage (the *Morales* factors), justifies treating it as a special circumstance. Only the numbered factors would be at issue in lying-in-wait first degree murder, as it does not require an intentional killing. (See fn. 12, *post.*) (*Morales, supra,* 48 Cal.3d at p. 557.)

degree murder lying-in-wait instruction, arguing that it improperly required a period of lying in wait sufficient to be equivalent to premeditation *or* deliberation, rather than premeditation *and* deliberation. After rejecting this contention, the court went on to address another of the defendant's arguments, "that if deliberation need not be proved, virtually any premeditated murder can satisfy the requirements of lying in wait and thus be murder in the first degree." (*Ibid.*) The defendant maintained, "once the prosecution has proved premeditation, it has, by the same facts, in effect proved lying in wait." (*Ibid.*) The Supreme Court found this contention to be meritless, stating: " 'Premeditated' simply means ' " 'considered beforehand.' " ' [Citation.] *For lying in wait, by contrast, the prosecution must prove the elements of concealment of purpose together with 'a substantial period of watching and waiting for an opportune time to act, and . . . immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage.'* ([*Morales*], *supra*, at p. 557 [lying-in-wait special circumstance].) These circumstances, taken together, present 'a factual matrix . . . distinct from "ordinary" premeditated murder . . . .' [Citation.]" (*Id.* at pp. 795–796, italics added.) *Stanley* was cited as authority in *Gurule*, in the context of the sufficiency of the evidence to support a first degree murder conviction, for the elements of lying-in-wait first degree murder. (*Gurule, supra*, at p. 630.) A later Supreme Court case, *People v. Cole* (2004) 33 Cal.4th 1158, 1205 [17 Cal.Rptr.3d 532, 95 P.3d 811] (*Cole*), repeated the *Morales* factors when addressing first degree murder under a lying-in-wait theory, citing *Gurule, supra*, at page 630. While this line of cases would appear to resolve the issue of whether a substantial period of waiting and watching is required for lying-in-wait first degree murder, other Supreme Court authority arguably undercuts this position.

Respondent relies upon Supreme Court authority that has noted that lying-in-wait first degree murder is different from the related lying-in-wait special circumstance. The Supreme Court recently noted in *Moon, supra*, 37 Cal.4th 1, that first degree murder lying in wait is slightly different from special circumstances lying in wait. *Moon* cites to *People v. Carpenter* (1997) 15 Cal.4th 312, 388 [63 Cal.Rptr.2d 1, 935 P.2d 708] as authority for this position (*Moon, supra*, 37 Cal.4th 1 at p. 22); *Carpenter* in turn relies upon *Ceja, supra*, 4 Cal.4th at page 1140, footnote 2. That *Ceja* footnote provides: "Lying in wait as a form of first degree murder under . . . section 189 should not be confused with the largely similar, but slightly different, special circumstance in which the 'defendant *intentionally* killed the victim *while* lying in wait.' ([]§ 190.2, subd. (a)(15), italics added to indicate language differences between the two statutes; see *People v. Morales* . . . .)" (*Ibid.*,

original italics.)[10] The Supreme Court goes on to "note that nothing in *People v. Hardy* . . . should be construed as eliminating the distinction between lying in wait as a form of first degree murder and lying in wait as a special circumstance, or as imposing an intentional murder requirement for lying-in-wait murder." (*Ceja, supra*, 4 Cal.4th at p. 1140, fn. 2.) These cases do not, however, directly address the question of whether the *Morales* factors are required only for the special circumstance of lying in wait, or if they are also required for first degree murder under a lying-in-wait theory. Defendant argues here that even for first degree murder lying in wait, those same factors listed in *Morales* as being required for special circumstances lying in wait, are required.[11]

An examination of the standard jury instructions would be expected to lend some guidance on the issue of whether a "substantial period" of watching and waiting is required for lying-in-wait first degree murder, or if it is only required for the special circumstance. CALJIC defines lying in wait for both essentially the same way[12] which could be read to support the position that the definition of lying in wait is the same for both. The current version of CALJIC does not include the "substantial period of watching and waiting" language in either definition.[13] (CALJIC Nos. 8.25 & 8.81.15.1.) CALJIC No. 8.81.15.1 defines the special circumstance of lying in wait by indicating that each of the following facts must be proved: "1. The defendant intentionally killed the victim; and [¶] 2. The murder was committed by means of

---

[10] We note that Proposition 18 (Stats. 1998, ch. 629, § 2, enacted as Prop. 18, approved by voters, Primary Elec. (Mar. 7, 2000) eff. Mar. 8, 2000) changed the word "while" lying in wait in the special circumstance to "by means of," conforming that part of the definition with lying-in-wait first degree murder, arguably "to essentially eliminate the immediacy requirement that case law had placed on the special circumstance." (*People v. Superior Court (Bradway)* (2003) 105 Cal.App.4th 297, 307 [129 Cal.Rptr.2d 324].) The special circumstance requirement that the defendant *intentionally* kill the victim continues to distinguish the special circumstance from first degree murder under a lying-in-wait theory. Lying-in-wait first degree murder "requires only a wanton and reckless intent to inflict injury likely to cause death." (*People v. Webster* (1991) 54 Cal.3d 411, 448 [285 Cal.Rptr. 31, 814 P.2d 1273] (*Webster*); accord, *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1148–1149 [124 Cal.Rptr.2d 373, 52 P.3d 572] (*Gutierrez*).)

[11] Again, those include that there be (1) a concealment of purpose; (2) a substantial period of watching and waiting for an opportune time to act; and (3) a surprise attack from a position of advantage following immediately. (*Morales, supra*, 48 Cal.3d at p. 557.)

[12] We reference only the definition of the phrase "lying in wait" in these instructions. Both CALJIC and Judicial Council of California Criminal Jury Instructions (2006–2007) (CALCRIM) have an additional element for the special circumstance of lying in wait, above those required for first degree murder, which recognizes that the special circumstance requires an intentional killing (and that the killing be by means of lying in wait). (See discussion of Prop. 18, fn. 10, *ante*, modifying the language of the special circumstance to "by means of lying in wait," rather than "while lying in wait.")

[13] Other *Morales* factors, such as concealment of purpose, waiting and watching for an opportune time to act, and surprise are mentioned in the CALJIC definitions, although the language does not exactly track the *Morales* language.

lying in wait. [¶] Murder which is immediately preceded by lying [in] wait is a murder committed by means of lying in wait." The definition of "lying in wait" follows: "a waiting and watching for an opportune time to act, together with a concealment by ambush or by some other secret design to take the other person by surprise [even though the victim is aware of the murderer's presence]. *The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation.* [¶] . . . [¶] [The word 'premeditation' means considered beforehand.] [¶] [The word 'deliberation' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.]" (Italics added.) This definition of lying in wait exactly tracks that in CALJIC No. 8.25.[14] The Supreme Court has repeatedly upheld CALJIC No. 8.25, despite its failure to track the *Morales* language.[15] This would support the argument that a "substantial period" of watching and waiting, even if required both for lying-in-wait first degree murder and for the related special circumstance, only requires that the period be long enough to demonstrate a state of mind equivalent to premeditation or deliberation. The Supreme Court's opinion in *Ceja, supra,* 4 Cal.4th at page 1139 supports this position.

---

[14] CALJIC No. 8.25 states that murder which is immediately preceded by lying in wait is murder of the first degree and then goes on to define lying in wait as: "a waiting and watching for an opportune time to act, together with a concealment by ambush or by some other secret design to take the other person by surprise [even though the victim is aware of the murderer's presence]. *The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation.* [¶] [The word 'premeditation' means considered beforehand.] [¶] [The word 'deliberation' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.]" (Italics added.)

[15] After the *Morales* decision, CALJIC No. 8.81.15 was modified (in a bracketed paragraph) to specifically add the three *Morales* elements (concealment of purpose, substantial period of watching and waiting, and immediate surprise attack). CALJIC No. 8.25 was not similarly modified, but a use note was added, which indicated, "The Committee expresses no opinion as to whether [the language from *Morales*] is also appropriate for CALJIC No. 8.25 inasmuch as the Supreme Court did not specifically so indicate. However, it may be something that the trial court should consider." (Use Note to CALJIC No. 8.25 (5th ed. 1990 pocket pt.) p. 49.) This use note no longer appears in the current version of the instruction (CALJIC No. 8.25 (Fall 2006 ed.)), having been deleted as of July 1992 (5th ed. 1992 pocket pt.) p. 86). (See *People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1291–1292 [3 Cal.Rptr.2d 808].) CALJIC No. 8.81.15, modified to contain the *Morales* factors, still appears in the current edition of CALJIC, and indicates that it is appropriate for crimes occurring on or before March 7, 2000 (eff. date of Prop. 18, referenced in fn. 10, *ante*). (CALJIC No. 8.81.15, use note (Fall 2006 ed.).) CALJIC No. 8.81.15.1, modified to reflect the changes required by Proposition 18 and to be used for crimes occurring after its adoption, does *not* include the *Morales* elements previously added to CALJIC No. 8.81.15, explaining that: "Since the language is the same [in Prop. 18] as that utilized in Penal Code section 189, the Committee has adapted this instruction from CALJIC [No.] 8.25 and the authorities cited in the Comment to that instruction." (Use Note to CALJIC No. 8.81.15.1 (Fall 2006 ed.) p. 435.)

In *Ceja*, the court was faced with the issue of the sufficiency of the CALJIC instruction of first degree murder under a lying-in-wait theory. The *Ceja* defendant challenged the first degree murder instruction given pursuant to CALJIC No. 8.25 on the ground that it omitted three key elements of lying in wait: (1) that there be a "substantial period of lying in wait"; (2) that the attack proceed from a position of advantage; and (3) that the attack follow immediately the watchful waiting (the *Morales* factors). The Supreme Court indicated that "Although the instruction does not verbatim track our language in [*Morales*], *supra*, [48 Cal.3d] at p. 557, we have repeatedly upheld the instruction, and continue to do so." (*Ceja, supra*, 4 Cal.4th at p. 1139.) As the court noted, " 'We did not require any particular phraseology in *Morales*, only the substance.' The instruction [8.25] contains the substance of all the legal requirements." (*Id.* at p. 1140.) This statement (and the explanatory material in fn. 2 in *Ceja*; see p. 578, *ante*) arguably supports defendant's position that even for lying-in-wait first degree murder, defined in CALJIC No. 8.25, the elements stated in *Morales* (including the "substantial period" of watching and waiting) are required. However, *Ceja, supra*, at page 1139, while indicating that CALJIC No. 8.25 has repeatedly been upheld despite its failure to track precisely the *Morales* language, does not directly and specifically hold that the *Morales* factors, including a substantial period of watching and waiting, must be proven for lying-in-wait first degree murder.[16]

CALCRIM appears to lend more guidance, in that those instructions draw a distinction between the definition of lying in wait for first degree murder and for the related special circumstance, insofar as the *Morales* factor of a substantial period of watching and waiting is concerned. CALCRIM No. 521 indicates that first degree murder lying in wait requires proof that the defendant murdered while lying in wait or immediately thereafter. The instruction indicates that a defendant murdered by lying in wait if he: (1) concealed his purpose from the victim; (2) waited and watched for an opportunity to act; and (3) then, from a position of advantage, intended to and did make a surprise attack on the person killed. The instruction further states that the lying in wait does not need to continue for any particular period of

---

[16] The *Ceja* court indicated that the defendant's first two allegedly omitted elements had been addressed, and rejected, in *People v. Edwards* (1991) 54 Cal.3d 787, 821–823 [1 Cal.Rptr.2d 696, 819 P.2d 436] (*Edwards*). (*Ceja, supra*, 4 Cal.4th at p. 1139.) *Edwards*, however, involved a lying-in-wait special circumstance issue. (*Edwards, supra*, 54 Cal.3d at p. 821 [only theory of first degree murder on which court instructed was premeditated and deliberate killing].) *Edwards* therefore does not address the issue of whether a "substantial period" of watching and waiting is required for first degree murder lying in wait. *Edwards* did uphold the lying-in-wait special circumstance instruction therein given, even though it also did not track precisely the *Morales* language regarding a "substantial period" of watching and waiting (see discussion, *post*). The court in *Ceja* also notes that the third element the defendant alleged was omitted was addressed in *Webster*. (*Ceja, supra*, at p. 1140.) *Webster* dealt with both CALJIC Nos. 8.25 and 8.81.15. (*Webster, supra*, 54 Cal.3d at p. 449.)

time, and uses the same language as CALJIC No. 8.25 (that *the duration only need show a state of mind equivalent to deliberation or premeditation*). CALCRIM No. 728, defining the special circumstance of lying in wait, states that the prosecution must "prove that: [¶] 1. The defendant intentionally killed; [¶] AND [¶] 2. The defendant committed the murder by means of lying in wait." The definition of lying in wait is similar to that used in CALCRIM No. 521 and the CALJIC instructions quoted above, with the notable addition of the following language: "The lying in wait does not need to continue for any particular period of time, but *its duration must be substantial and* must show a state of mind equivalent to deliberation or premeditation." (CALCRIM No. 728, italics added.)[17]

In another line of cases, the Supreme Court was faced with challenges to the constitutionality of the lying-in-wait special circumstance based upon the argument that it does not sufficiently narrow the scope of death-eligible defendants by defining lying in wait more narrowly than first degree murder under a lying-in-wait theory. In this context, in *Gutierrez, supra,* 28 Cal.4th at pages 1148–1149, the Supreme Court indicated that it had frequently rejected similar claims and noted, " '[M]urder by means of lying in wait requires only a wanton and reckless intent to inflict injury likely to cause death. [Citations.]' In contrast, the lying-in-wait special circumstance requires 'an *intentional* murder, *committed under circumstances which include* (1) *a concealment of purpose,* (2) *a substantial period of watching and waiting for an opportune time to act, and* (3) *immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage* . . . [the *Morales* factors].' [Citations.] Furthermore, the lying-in-wait special circumstance requires 'that the killing take place during the period of concealment and watchful waiting, an aspect of the special circumstance distinguishable from a murder perpetrated by means of lying in wait, or following premeditation and deliberation. [Citations.]' " (Some italics added and omitted.)[18] The court finally concludes that "The distinguishing factors indentified in *Morales* and [*People v.*] *Sims* [(1993) 5 Cal.4th 405 [20 Cal.Rptr.2d 537, 853 P.2d 992]] that characterize the lying-in-wait special circumstance constitute 'clear and specific requirements that sufficiently distinguish from other murders a murder committed while the perpetrator is lying in wait, so as to justify the classification of that type of case as one warranting imposition of the death penalty.' [Citation.]" (*Id.* at p. 1149.)

---

[17] We note that CALCRIM includes the element of concealment, listed in *Morales* as being required for the special circumstance lying in wait, in both definitions. Both CALCRIM No. 521 and CALCRIM No. 728 also require that there be a surprise attack. CALCRIM includes the *Morales* factor of a substantial period of watching and waiting, however, only in the special circumstance instruction.

[18] The crime in *Gutierrez* took place in 1986, long before the adoption of Proposition 18 in the year 2000.

The court had reached the same conclusion, in the context of sufficiency of the evidence to support a special circumstance allegation, in *People v. Sims*, *supra*, 5 Cal.4th at page 432: "[T]he factual matrix that justifies treatment of lying in wait as a special circumstance is 'an intentional murder, *committed under circumstances which include* (1) *a concealment of purpose*, (2) *a substantial period of watching and waiting for an opportune time to act, and* (3) *immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage*[.]' [Citations.]" (Italics added.) (Accord, *Moon*, *supra*, 37 Cal.4th at p. 22.) From these cases, the *Morales* factors (including the requirement of a substantial period of watching and waiting) appear to be part of the factual matrix of the definition of lying in wait for the special circumstance, which distinguishes it from first degree murder under a lying-in-wait theory, underlying the Supreme Court's upholding of the constitutionality of the special circumstance. If that were so, the *Morales* factors arguably could not additionally be elements of first degree murder under a lying-in-wait theory. Again, this interpretation was supported by the fact that the drafters of CALCRIM added the substantial duration language only to the special circumstance instruction.[19]

How then to reconcile the apparent discrepancies in the law and the standard jury instructions? Respondent would presumably argue that CALCRIM's addition of the substantial duration language only to the special circumstance instruction demonstrates that the drafters of the CALCRIM instructions felt it applied only there, and not to lying-in-wait first degree murder, and that by including it they intended to indicate that something more than just a sufficient duration to show a state of mind equivalent of premeditation or deliberation was required.[20] Defendant would undoubtedly counter that the Supreme Court's decisions in *Stanley*, *Hardy*, *Gurule*, and *Cole* cannot be ignored, and that the failure to include the substantial duration language in the definition of lying-in-wait first degree murder was a mere oversight.

■ We believe that the most reasonable reconciliation of all the authority discussed above is that the *Morales* factors, including the requirement of a "substantial period" of watching and waiting, are a part of the factual matrix required both for first degree murder under a lying-in-wait theory, and for the

---

[19] CALCRIM reiterates that the lying in wait for the special circumstance need not continue for any particular period of time. As previously indicated, it required that the duration be both substantial *and* sufficient to demonstrate that the defendant had the state of mind equivalent to deliberation or premeditation. CALCRIM does, however, incorporate other *Morales* factors into both the lying-in-wait first degree murder instruction and the instruction for the related special circumstance. (CALCRIM Nos. 521 and 728; see fn. 16, *ante*.)

[20] This is supported by the fact that CALCRIM No. 728 indicates that the duration of lying in wait "must be substantial *and* must show a state of mind equivalent to deliberation or premeditation." (CALCRIM No. 728, italics added.)

lying-in-wait special circumstance.[21] As repeatedly held by the Supreme Court, however, the jury instruction language need not exactly track the language of *Morales* in order to define adequately the required elements, for either definition. The court has held that jury instructions defining the required period of lying in wait, which indicate that it need not be for any particular length of time (so long as it is sufficient to demonstrate that defendant had a state of mind equivalent to premeditation or deliberation), sufficiently reflect the *Morales* requirement that the period of watching and waiting be for a "substantial period." (See *Ceja, supra,* 4 Cal.4th at pp. 1139–1140; *Edwards, supra,* 54 Cal.3d at p. 823.) Even for the lying-in-wait special circumstance, no particular period of time is required. (CALJIC No. 8.81.15.1; CALCRIM No. 728.) Indeed, the Supreme Court has indicated that for the lying-in-wait special circumstance, under the substantial period of watching and waiting factor from *Morales*, "We have never required a certain minimum period of time, only a period not insubstantial." (*Edwards, supra,* at p. 823.) The *Edwards* court upheld a lying-in-wait special circumstance where the period of watching and waiting was a matter of minutes (enough time to walk a quarter of a mile), finding "[t]his was substantial." (*Edwards, supra,* at pp. 825–826.) In *Hardy,* a case where the evidence supported an inference that the defendants entered the victims' bedrooms while they slept and murdered them while they were helplessly sleeping, the court held: "From this evidence, the jury could reasonably conclude defendants concealed their murderous intention and struck from a position of surprise and advantage, factors which are the hallmark of a murder by lying in wait. *Insisting on a showing that defendants actually watched the victims sleeping and waited a moment before attacking reads the law in too literal a fashion.*" (*Hardy, supra,* 2 Cal.4th at p. 164, italics added.) As explored further below, there was sufficient evidence in the present case that defendant had the state of mind of premeditation or deliberation, and the evidence thus sufficed to demonstrate the requisite period of watching and waiting.

Viewed in a light most favorable to the prosecution, the evidence here establishes that defendant and the victim were engaged in a verbal altercation on a public street, with several other individuals in the vicinity. Defendant told the victim something to the effect of "I'll show you what I mean," and "stay here if you want to live." Defendant then walked to a nearby garbage

---

[21] This conclusion comports with the court's holding in *Stanley,* as well as its holding in *Gutierrez. Gutierrez*'s indication that the *Morales* factors are a part of the factual matrix for the lying-in-wait special circumstance does not mean that they *alone* set apart the special circumstance from the related theory of first degree murder. As indicated *ante,* the court held in *Gutierrez* that an *intentional* murder committed under circumstances demonstrating the *Morales* factors, *during* the period of concealment and watchful waiting, sets the special circumstance murder apart from an ordinary lying-in-wait first degree murder, justifying classification as a crime warranting the imposition of the death penalty. (*Gutierrez, supra,* 28 Cal.4th at pp. 1148–1149.)

can, retrieved a shotgun, and returned to the victim within a minute. He carried the shotgun in plain view, pointed down. He said something to the victim, who replied, "It's not that serious." Defendant then quickly[22] shot the victim three times with the shotgun, from a relatively close proximity, including a fatal shot to the chest.

■ A reasonable jury could conclude that defendant's statement to the victim, telling him to stay there if he wanted to live, was a subterfuge intended to convince the victim to stay put so defendant could go and get his shotgun and kill him, supporting the element of concealment of purpose. The evidence also would support a finding that the lying in wait was for a sufficient period of time, because, as more fully detailed *post*, it was sufficient to show a state of mind consistent with premeditation or deliberation.[23]

Given the confusion regarding the definition of lying in wait, as detailed above, we feel compelled to indicate, should the Supreme Court clarify this issue in a manner inconsistent with our analysis,[24] that any error in instructing on lying in wait was harmless. Reversal is not required so long as a valid ground for the verdict remains, "absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [17 Cal.Rptr.2d 365, 847 P.2d 45].) When the jury has been instructed on a theory not supported by the evidence, we affirm unless "a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory." (*Ibid.*) "[I]nstruction on an unsupported theory is prejudicial only if that theory became the sole basis of the verdict of guilt; if the jury based its verdict on the valid ground, or on both the valid and the invalid

---

[22] The precise amount of time that elapsed from when defendant returned with the shotgun, until the firing of the shots, was not established by the evidence. From the witnesses' testimony, however, it appears that once defendant returned, the events followed one upon the other, in fairly quick succession.

[23] A reasonable jury could also rely upon the fact that defendant, and others, were in the area prior to the victim's arrival, as supporting a sufficient period of lying in wait. Even though a contrary inference could have been drawn, as defendant argues, the jury could have concluded that defendant was waiting for the victim. A reasonable jury could also have concluded that defendant's obtaining of the gun, returning, and engaging the victim in a short conversation before opening fire, constituted waiting and watching for an opportune time to act. Also, even though defendant did not attempt to isolate the victim, a reasonable jury could have reached the conclusion that if defendant's statement to the victim to stay where he was acted as a subterfuge, then defendant's returning with the shotgun to kill the victim was immediately launching a surprise attack on an unsuspecting victim from a position of advantage. These are the other *Morales* factors which defendant complains were not supported by sufficient evidence.

[24] This area of the law would benefit from such clarification.

ground, there would be no prejudice, for there would be a valid basis for the verdict." (*Ibid.*) Nothing in the record here affirmatively demonstrates that the jury in fact found defendant guilty of first degree murder based upon the lying-in-wait theory, as opposed to the theory of premeditation and deliberation. While, as defendant notes, the prosecutor argued the lying-in-wait theory, he spent more time arguing premeditation and deliberation. No questions were asked by the jury during deliberations that would indicate they were focused on the lying-in-wait theory.[25] Since, contrary to defendant's argument, there was sufficient evidence of defendant's premeditation and deliberation to sustain the first degree murder conviction on that theory, the conviction must be affirmed.

■ CALJIC No. 8.20 defines "deliberate" as "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." It defines "premeditated" as "considered beforehand." The instruction indicates: "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." As to the period of time that must be involved, the instruction states, "The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. The time will vary with different individuals and under varying circumstances. [¶] The true test is not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation as will fix an unlawful killing as murder of the first degree. [¶] To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill." (CALJIC No. 8.20.) Pertinent categories of evidence bearing on premeditation and deliberation include "(1) planning activity; (2) motive; and (3) manner of killing. [Citation.] However, these factors need not all be present, or in any special combination; nor must they be accorded a particular weight. [Citation.] . . . [D]eliberation and premeditation can occur in a brief period of

---

[25] The jury appears to have asked only for the readback of the testimony of James Lyles, regarding his description of the shotgun and his touching of it, when he discovered it in the garbage can. The trial lasted from April 6, 2005, through April 21, 2005; the jury deliberated for one day (and an hour on the next day) before returning its verdict.

time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity[,] and cold, calculated judgment may be arrived at quickly . . . .' [Citation.]" (*People v. Garcia* (2000) 78 Cal.App.4th 1422, 1427–1428 [93 Cal.Rptr.2d 796]; see *People v. Anderson* (1968) 70 Cal.2d 15, 27 [73 Cal.Rptr. 550, 447 P.2d 942].)

Defendant told the victim to stay where he was. Defendant commented that he was going to show the victim what he meant. Defendant then went and retrieved a loaded shotgun. After exchanging brief remarks with the victim, defendant quickly shot the victim three times. Although very little time elapsed, this evidence was sufficient to support the verdict of first degree murder on a deliberation and premeditation theory. The mere fact that defendant approached initially with the shotgun pointed at the ground, and said something to the victim (to which the victim replied that it was not that serious), does not necessarily negate defendant's deliberation and premeditation, as he contends. A reasonable jury could determine that defendant's decision to retrieve the shotgun and to kill the victim was a "cold and calculated judgment and decision," even though it occurred over a short period of time. A reasonable jury could conclude that motive for the murder was demonstrated by evidence that defendant did not want the victim in the area where drugs were stored or sold. Planning activity could reasonably be found in the evidence of defendant's statement that he was going to show the victim "what he meant," followed by his retrieval of the shotgun. The manner of killing, while not an execution-style single shot to the head, could still support a finding of premeditation and deliberation, as defendant quickly fired three shots at the victim, with a shotgun, from a relatively close range. Thoughts may indeed flow with great rapidity. The evidence here supports a reasonable conclusion that defendant's decision to kill, although quickly formed, was the result of a cold and calculated judgment and decision. A rational trier of fact could have been so persuaded. That is all that is required to sustain the verdict. (*People v. Wharton* (1991) 53 Cal.3d 522, 604 [280 Cal.Rptr. 631, 809 P.2d 290]; CALJIC No. 8.20.)

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 572.

## DISPOSITION

The judgment is affirmed.

Ruvolo, P. J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 14, 2007, S148453.