Filed 8/12/25  P. v. Mendiola CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082767 |
| v. | (Super. Ct. No. INF2201836) |
| JUAN MENDIOLA III, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Randolph Rogers, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, Seth M. Friedman, and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

# INTRODUCTION

Defendant and appellant Juan Mendiola stabbed I.R. after seeing I.R. talking with his girlfriend.  Just after the stabbing, I.R. identified defendant in a photographic lineup.  A jury convicted defendant of willful, premeditated, and deliberate attempted murder (Pen. Code §§ 664/187, sub. (a); count 1)[1], and making an attempted criminal threat (§§ 664/422).  The trial court sentenced him to nine years plus 14 years to life.

Defendant contends (1) insufficient evidence supports the jury's attempted murder verdict, (2) the trial court erroneously admitted the victim's pretrial identification of defendant as the assailant, and (3) the trial court improperly imposed sentencing enhancements.  We affirm.

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

I.R., then 17 years old, was having trouble sleeping, so he went to ride his bicycle around his neighborhood around 2:00 a.m.  Deputy Paiyarat saw I.R. and asked him why he was up so late.

A little while later, I.R. saw a male (who I.R. later identified as defendant) wearing blue checkered shorts, white shoes, and no shirt run across the street and into an apartment complex.  Not long after, I.R. saw a woman (L.R.) crying, who appeared to be

---

[1]  All further statutory references are to the Penal Code.

in pain. L.R. asked I.R. for help and if there were any police around. I.R. led L.R. to Deputy Paiyarat and then left the area.

Later, L.R. saw I.R. still riding his bike and asked for a ride back to her apartment. As they approached her apartment, defendant (L.R.'s boyfriend) yelled out for L.R. After I.R. dropped off L.R., she went into her apartment to get him some water. When she came back outside, L.R. said, "Oh, shit. He's coming."

I.R. turned around and saw defendant running toward him. Defendant yelled at I.R., "Who are you? What the fuck are you doing here?" I.R. turned around to leave, but defendant kept yelling at him. I.R. looked over his shoulder as defendant began punching him. I.R. tried to block defendant's attack and got some distance from defendant, but he dropped his bike. When he tried to get his bike, defendant said to him, "Do you want to fucking die?" When I.R. responded "no," defendant replied, "If you don't want to fucking die, [] get the fuck out of here before I kill you."

I.R. got on his bike and left. As he pedaled away, he realized he had been stabbed. He noticed his back was wet with blood and it was getting harder and harder to breathe. I.R. called his dad for help and then collapsed. I.R. suffered a punctured lung and a broken rib, and his vertebrae separated from his spine.

A jury convicted defendant of one count of willful, premeditated, and deliberate attempted murder (§§ 664/187, sub. (a); count 1), and one count of attempted criminal threat (§§ 664/422; count 2). As to count 1, the jury found true the allegation that defendant personally used a deadly weapon (§§ 12022, sub. (b)(1), 1192.7, sub. (c)(23)),

3

and personally inflicted great bodily injury (§§ 12022.7, sub. (a), 1192.7, sub. (c)(8)). The jury also found true the allegation that defendant had suffered a serious prior offense (§ 667, sub. (a)), and a strike prior offense (§§ 667, subs. (c), (e)(1), 1170.12, subd. (c)(1)).

The trial court sentenced defendant to a prison term of nine years plus 14 years to life. The sentence consisted of 14 years to life on count 1, plus one year for the weapon enhancement, three years for the great bodily injury enhancement, five years for the serious felony prior enhancement, and 18 months on count 2, to run concurrent to the sentence on count 1.

## III.

## DISCUSSION

### A. *Attempted Murder*

Defendant first contends his attempted murder conviction must be reversed because there was insufficient evidence that he acted with the intent to kill and with deliberation and premeditation. We disagree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the

evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) We may reverse a conviction for a lack of substantial evidence only if it appears ""'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].""'" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

There was substantial evidence that defendant acted with the intent to kill. Although no one saw what defendant used to stab I.R., whatever he used seriously injured I.R. Defendant thrusted the object into the center of I.R.'s back with such force that it broke one of I.R.'s ribs, severed his vertebrae from his spine, and pierced his lung. From this evidence alone, the jury could reasonably find that defendant intended to kill I.R. (*People v. Bolden* (2002) 29 Cal.4th 515, 561 ["defendant could have had no other

intent than to kill" when he plunged the knife deeply into a "vital area of the body of an apparently unsuspecting and defenseless victim"].)

There was likewise substantial evidence that defendant acted with deliberation and premeditation. "'"Deliberation" refers to careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance. [Citations.] "The process of premeditation . . . does not require any extended period of time."'" (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419.)

In *People v. Anderson* (1968) 70 Cal.2d 15, the California Supreme Court "identified three categories of evidence relevant to determining premeditation and deliberation: (1) events before the murder that indicate planning; (2) a motive to kill; and (3) a manner of killing that reflects a preconceived design to kill." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 663.) These factors are "'descriptive, not normative' . . . are not all required . . . nor are they exclusive in describing the evidence that will support a finding of premeditation and deliberation." (*Ibid*.) We therefore "need not accord them any particular weight." (*People v. Halvorsen*, *supra*, 42 Cal.4th at p. 420.)

There was evidence that defendant had a motive to kill I.R. Defendant was angry and yelling when he approached L.R., his girlfriend, and I.R., while they were together on I.R.'s bicycle. Defendant angrily asked I.R., "Who are you? What the fuck are you doing here?" before attacking him. From this evidence, the jury could reasonably find that defendant had a motive to kill I.R.—in retaliation for being with defendant's girlfriend.

6

More to the point, defendant's overall behavior provided substantial evidence of deliberation and premeditation. After approaching I.R. and yelling at him, I.R. turned around and began walking away. With his back to defendant, defendant then stabbed I.R. in the back—again, with such force that it broke I.R.'s rib. From this evidence alone, the jury reasonably could have found that defendant's decision to stab I.R. was "cold and calculated" even though he made the decision "over a short period of time." (*People v. Poindexter* (2006) 144 Cal.App.4th 572, 588.)

B. *I.R.'s Identification of Defendant*

Defendant contends the trial court improperly admitted I.R.'s pretrial identification of him and improperly allowed I.R. to identify defendant during the trial. In defendant's view, law enforcement's pretrial identification process was unconstitutional. We disagree.

Deputy Paiyarat visited I.R. in the hospital shortly after the incident. I.R. described the attacker as a Hispanic male adult approximately 40 years old, wearing checkered shorts and no shirt. Paiyarat showed I.R. a "six-pack" lineup of six males that did not include a picture of defendant and asked I.R. if his assailant was one of them. I.R. was slurring his words, appeared to be in pain, and was falling asleep. I.R. recalled his assailant had arm and chest tattoos, but could not recall what they were. I.R. was "going back and forth between two pictures" but eventually concluded his assailant was not in the six-pack.

7

Later that day, Deputy Paiyarat showed I.R. a second six-pack photo lineup which included defendant's picture. Deputy Paiyarat showed I.R. all of the photos at once. After I.R. looked at them, Paiyarat asked I.R. if he wanted to see any of them again. I.R. said "the first one," which was defendant. Deputy Paiyarat asked I.R. "How sure are you that this is him?" I.R. replied, "six out of ten." I.R. said defendant looked like his assailant, but asked to see the photos from the first six-pack so that he could review the tattoos. Deputy Paiyarat told I.R. that he did not have the first six-pack with him. Paiyarat then held up defendant's picture again and said, "[W]hat about this one?" I.R. said "[t[hat looks like him" and that he was 5.5 out of 10 certain that defendant was his assailant. I.R. identified defendant based on his face, mustache, and bald head, "[a]nd that was it." I.R. did not recognize defendant because of his tattoos, and instead "just remember[ed] his face."

A couple of days later, Deputy Lopez told I.R. that defendant was in custody. I.R. asked Lopez for a picture of the suspect so that he could be sure that he identified the right suspect. Lopez found one on defendant's Facebook account and sent it to I.R. I.R. confirmed again that defendant was his assailant. I.R. explained that he recognized defendant's face and a "Coachella" tattoo on his chest.

Defendant moved to exclude I.R.'s identification of him on the ground that the photographic lineup procedure was unduly suggestive. For the same reason, defendant also moved to preclude I.R. from identifying defendant in court during trial. The trial court denied both requests. We find no error with either decision.

To determine whether the admission of the identification evidence violates a defendant's right to due process, courts must consider "(1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.)

An identification procedure is unduly suggestive if it causes the "'defendant to "stand out" from the others in a way that would suggest the witness should select him.'" (*People v. Avila* (2009) 46 Cal.4th 680, 698.) We independently review the trial court's ruling that an identification procedure was not unduly suggestive. (*Id*. at p. 698.)

The identification procedure employed here was not unduly suggestive. To begin with, we have reviewed the two six-packs and discern nothing suggestive about them. All 12 men fit the description of defendant that I.R. gave law enforcement: a Hispanic man, in his 40s, roughly the same build as defendant, with a shaved head or very short hair. (See *People v. Brandon* (1995) 32 Cal.App.4th 1033, 1052 ["[T]here is no requirement that a defendant in a lineup, either in person or by photo, be surrounded by others nearly identical in appearance.]".) Although only two men in each six-pack had tattoos (one of whom was defendant in the second six-pack), I.R. did not recognize

9

defendant based on his tattoos.  Instead, he "just remember[ed] [defendant's] face."  The lack of tattoos on the other men in the six-packs was thus immaterial to I.R.'s identification of defendant.  When, as here, "photographs in a lineup are of males of the same ethnicity and 'generally of the same age, complexion, and build, and generally resembling each other,' and where the accused's 'photograph did not stand out, and the identification procedure was sufficiently neutral,' the lineup is not impermissibly suggestive.  [Citations.]"  (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1082; accord, *People v. Johnson* (1992) 3 Cal.4th 1183, 1217 [finding photographic lineup not unduly suggestive where "[a]ll of the photographs were of Black males, generally of the same age, complexion, and build, and generally resembling each other"].)  Nothing in the second six-pack "'caused defendant to "stand out" from the others in a way that would suggest the witness should select him.'"  (*People v. Avila*, *supra*, 46 Cal.4th at p. 698.)

Defendant contends Paiyarat singling out his photo in the second six-pack and asking I.R. "what about this one?" and Lopez sending I.R. a picture of defendant was unduly suggestive.  But this conduct occurred *after* I.R. had already identified defendant in the second six-pack, without any suggestive behavior from either officer.  "Generally, a pretrial procedure will only be deemed unfair if it suggests *in advance* of a witness's identification the identity of the person suspected by the police."  (*People v. Brandon*, *supra*, 32 Cal.App.4th at p. 1052, italics added; *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 769 [same].)  The officers' conduct *after* I.R. identified defendant as his attacker was thus not unduly suggestive.  (See *People v. Ochoa* (1998) 19 Cal.4th

353, 413 [identification procedure not unduly suggestive when witness asked to see a picture of the suspect *after* identifying the defendant as the offender]; *People v. Holmes, McClain and Newborn*, *supra*, at p. 769 [same].)

Even if the identification process was unduly suggestive, I.R.'s identification of defendant was nonetheless reliable under the totality of the circumstances here. I.R. saw defendant before the altercation as defendant ran across the street, and I.R.'s description of him then was consistent with defendant's appearance and clothing. Critically, I.R. got a clear view of defendant's face right before the attack, and I.R. never identified anyone other than defendant as his attacker. Although I.R. was at most a 5.5 or 6 out of ten certain it was defendant, I.R. identified defendant as the assailant immediately after Paiyarat showed him the second six-pack less than 24 hours after the attack. Under these circumstances, we conclude I.R.'s identification of defendant was sufficiently reliable. (See *People v. Kennedy* (2005) 36 Cal.4th 595, 611, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.) As a result, we conclude the trial court properly admitted I.R.'s pretrial and in-court identification of defendant as his attacker.

C. *Sentence Enhancements*

Defendant faced liability for three sentence enhancements: one year for the weapon enhancement, three years for the great bodily injury enhancement, and five years for the serious felony prior enhancement. The probation report outlined several factors in aggravation, including that defendant "engaged in violent conduct that indicates a serious danger to society," while noting there were no mitigating factors. The report opined that

defendant's assault on I.R. "clearly demonstrates the serious threat to public safety he poses." The report also noted that, "despite the numerous opportunities previously afforded him by the court, parole, and probation to address his criminogenic needs, [defendant's] criminality has only escalated."

The People urged the trial court to impose all three enhancements and give defendant the maximum statutory sentence given his extensive criminal history and the egregious facts of this case. Defense counsel, on the other hand, argued that section 1385 required all but one enhancement to be dismissed. Defense counsel thus asked the court to dismiss the five-year prior enhancement since it was more than five years old, strike one of the other enhancements, and impose the remaining enhancement.

The trial court stated that it "did consider" striking the five-year prior enhancement, but was "leaning against" it because defendant "violated probation [for that offense] and ended up going to state prison on it," and he had "two or more state prison commitments before this offense." The court told defense counsel, "if it had been different, I'd have been with you. But I'm not seeing it under the circumstances."

In 2022, the Legislature amended section 1385 to include subdivision (c). (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 295; *People v. Walker* (2024) 16 Cal.5th 1024, 1028.) Section 1385, subdivision (c) provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) Subdivision (c)(2) of section 1385 provides: "In exercising its discretion under

this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (Italics added.)

Thus, under section 1385, subdivision (c)(2), "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker*, *supra*, 16 Cal.5th at p. 1029.)

The parties disagree whether the trial court found that dismissing the enhancements would endanger public safety. Defendant contends the court made no such finding while the People argue the court did so, albeit "tacit[ly]." We agree with the People. The court's comments show that, given defendant's prior prison sentences and violation of parole, the court was concerned defendant would reoffend—in other words, that he would endanger public safety again.

In any event, section 1385, subdivision (c), contains no express or specific requirement that the court articulate any findings for its rulings. (§ 1385, subd. (c); cf. § 1385, subd. (a); *In re Large* (2007) 41 Cal.4th 538, 550 [noting express findings requirement of § 1385, subd. (a), if a prior strike conviction is dismissed].) On this record, in the absence of an affirmative duty to make findings, we presume that the court was aware of its discretion under section 1385, subdivision (c), had an adequate basis for its section 1385, subdivision (c) findings, and that the findings were correct. (See *People v. Giordano* (2007) 42 Cal.4th 644, 666 [appellate courts "presume that a judgment or order of the trial court is correct"])

Regardless, even without an express finding that dismissal would endanger public safety, "a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker*, *supra*, 16 Cal.5th at p. 1029.) The trial court here considered everything the parties presented in making its decision, including the probation report outlining defendant's criminal history and the absence of any mitigating factors. The court was aware of its discretion under section 1385 to dismiss the enhancements and properly exercised that discretion in imposing all three enhancements instead of dismissing two of them as defendant requested.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

Acting P. J.

We concur:

FIELDS

J.

RAPHAEL

J.