Filed 2/26/14  P. v. Garcia CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DIEGO ROSALINO GARCIA,<br><br>    Defendant and Appellant. | E057421<br><br>(Super.Ct.No. SWF1102817)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The petition for rehearing is denied.  The opinion filed in this matter on February 4, 2014, is hereby modified, as follows:

On page 16, above the "DISPOSITION," insert,

4.    **Defendant's Conviction for Aggravated Assault in Count 4 Was Proper.**

Defendant argues that his conviction for assault with a firearm violated due process because he was acting in "lawful self-defense of Dawn when he pointed his firearm at his unidentified accomplice."  Essentially, defendant is arguing there is insufficient evidence to support the conviction on that count.  We disagree.

In reviewing a sufficiency of evidence claim, our role is limited; we determine whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.)  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably

1

deduce from the evidence.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  "[I]t is the *jury*, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt."  (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139, italics original, citing *People v. Bean* (1988) 46 Cal.3d 919, 933.)  Therefore, we are not free to substitute our judgment for that of the jury.  (*People v. Poindexter* (2006) 144 Cal.App.4th 572, 577.)

Penal Code section 694 authorizes any other person, in aid or defense of a person about to be injured, to make resistance sufficient to prevent the offense.  The concepts of self-defense and defense of others are intertwined.  (*People v. Enraca* (2012) 53 Cal.4th 735, 761.)  The doctrine of self-defense is applicable when a defendant *reasonably* believes that his safety is endangered.  (*Ibid.*)  It is inapplicable where the defendant has created the circumstances under which his adversary's attack or pursuit is legally justified.  (*Ibid.*)

Here, the trial court properly instructed the jury on the doctrine of defense of others, and it was for the jury to determine whether the defendant's conduct in pointing the gun at his accomplice was justified or unjustified.  We find the evidence supporting the jury's determination to be substantial where the attempted robbery was accomplished by the defendant's assaultive conduct in pointing a firearm at the victims.  The accomplice's act of "flirting" with one of the victims does not support a reasonable belief her safety was endangered by the accomplice.

The greater threat posed by defendant's use of the firearm gave rise to the circumstances which made the victim vulnerable to the "flirting" by his accomplice.  It was reasonable for the jury to reject the defendant's theory that he was trying to defend one of the very persons he was attempting to rob.  The conviction on count 4 was proper.

Except for this modification, the opinion remains unchanged.  This modification does not change the judgment.


NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ          
P.J.

We concur:

HOLLENHORST          
J.

McKINSTER          
J.

2

Filed 2/4/14 (unmodified version)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DIEGO ROSALINO GARCIA,<br><br>    Defendant and Appellant. | E057421<br><br>(Super.Ct.No. SWF1102817)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. John M. Davis, Judge. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant, Diego Garcia, was charged with two counts of attempted robbery (Pen. Code, §§ 664 & 211),[32] one count of assault with a firearm (§ 245, subd. (a)(2)), and one count of being an active participant in a criminal street gang (§ 186.22, subd. (a)). The defense was mistaken identification, and during in limine proceedings, defendant made a motion to sever the gang count from the balance of the charges, which was denied. He was found guilty after a jury trial and sentenced to an aggregate term of 13 years in state prison. He appealed, arguing that his due process rights were violated by the court's ruling on his severance motion. We affirm.

## BACKGROUND

### a. Counts 1, 2, and 4—The Incident

At approximately 9:30 or 10:00 p.m. on October 4, 2011, Clayton Shuler and Dawn Franklin were hanging out at a dog park in Temecula, California. While there, they saw two males and one female walking down a sidewalk. One of the males, identified at trial as the defendant, entered through the park gates and got a drink of water at the water fountain. After getting a drink, the defendant walked over to Shuler and Franklin, pulled a gun out and slammed it on the table, telling them they did not need to be afraid. The defendant then instructed the two to show him what they had.

Shuler removed his cell phone, wallet and keys from his pocket and put them on the table, but he had only a few dollars in his wallet. After defendant went through the wallet, he threw it down and told his companions to come inside the park. Defendant

---

[32] All further statutory references are to the Penal Code unless otherwise

*[footnote continued on next page]*

4

directed the male companion to pat down Shuler and Franklin. The male companion started making sexual gestures at Franklin by licking his lips. Defendant became irritated and pointed his gun at the male companion. Defendant then directed the female companion to search Shuler and Franklin. Franklin recognized the female as a friend of her cousin's. The female companion checked Shuler and Franklin, and confirmed they did not have anything. Then defendant and his two companions left the park.

Shuler called the police, who responded and took a report. Shuler and Franklin described the robber as a Hispanic adult male, wearing a black hoodie, blue jeans. Shuler described defendant's weapon as a Beretta, black with a rounded top. When shown a photographic lineup, Shuler was uncertain about the defendant, but was able to pick out the female companion.

On October 14, 2011, Franklin saw the defendant and the female companion, along with several others, behind the Paul Mitchell cosmetology school. Defendant was wearing the same hoodie. Franklin recognized defendant and the female, and called the police. A deputy sheriff arrived at the location and detained defendant and the female companion.

On October 20, 2011, the same deputy met with Franklin at her residence. He showed Franklin a photographic lineup, and Franklin recognized the person who held her up. Shuler also arrived at Franklin's residence and was interviewed separately by the deputy. Shuler repeated his description of the defendant and the incident, adding the

_____

*[footnote continued from previous page]*
indicated.

detail that the defendant pointed the gun at him during the robbery attempt. Shuler also described a necklace that had two metal spikes crossed, worn by the robber. The deputy showed Shuler a photographic lineup but Shuler was unsure about the robber and did not want to choose the wrong person.

A search of defendant's residence was conducted pursuant to a search warrant. In the garage of the residence, a deputy located a gun underneath a cushion of a couch. Another deputy located an item consistent with a necklace that looked like a cross in one of the bedrooms.[33] Defendant was arrested following the search.

### b. Count 3—Active Participation in Street Gang

A gang expert testified about Old Town Trece. In Temecula, there is only one traditional Hispanic gang: Old Town Trece. The turf claimed by Old Town Trece includes the park where the attempted robbery occurred. Members of Old Town Trece earn respect within the gang by committing crimes, which is known as "putting in work." Tattoos are important because they show that a person supports the group for life. "Trece" refers to 13, or the 13th letter of the alphabet, "M," which represents the Mexican Mafia. Symbols used by members of Old Town Trece include the number 13, the letters "O" and "T," for "Old Town," the numbers "15" (for "O," the 15th letter of the

---

[33] This item was never well-described on the record, but was apparently a rosary, found hanging from a peg of a coat rack shelf. The deputy noted that Shuler's description did not indicate the necklace was a rosary or that it had beads. In fact, Shuler was pretty adamant that the suspect's necklace was not a rosary. Shuler told an investigator that the item in the photograph was not what the defendant was wearing, although at trial, Shuler was unsure that the necklace (of which a photograph was shown to him) was the one defendant was wearing.

alphabet) and "20" (for "T," the 20th letter of the alphabet), and three dots, which signify the phrase, "mi vida loco." The three dots are usually the first tattoos a gang member will get.

As of October 2011, there were 15 to 20 members of Old Town Trece. To become a member, one usually has to be "jumped in," or beaten for 13 seconds, as respect to the Mexican Mafia. The primary activities of Old Town Trece include graffiti, vandalism, weapon possession, car theft, assaults, including assaults with deadly weapons, marijuana and methamphetamine sales, and robbery. Members of Old Town Trece have been convicted of at least four crimes arising from the gang's primary activities. In the expert's opinion, Old Town Trece qualified as a criminal street gang.

The expert was familiar with defendant, who had been contacted by other members of the gang task force, although the expert had never personally spoken to the defendant. Defendant acquired a tattoo of an "O" and a "T," plus three dots, sometime after March 20, 2011.[34] He was known to associate with other active members of Old Town Trece since at least March 18, 2009, when he was contacted in the company of other gang members. On March 21, 2010, defendant was contacted again in the company of other known gang members.

The use of a gun to attempt to rob someone in gang territory is consistent with putting in work for the gang, and consistent with being an active member. Based on his

---

[34] Defendant's tattoo looks different from those of other gang members because it is not in Old English script, and the "O" is not a complete circle. Defendant's mother was told that it was a family symbol in the Aztec or Mistec language.

7

tattoos, his known associates, information on field interview cards and conversations with other gang members, the gang expert formed the opinion that defendant was an active participant in Old Town Trece.

### c. Defense Evidence

Defendant lived at home with his parents, five siblings and one cousin. Defendant worked at a nursery six days a week and he was working on October 4, 2011. Defendant's mother was sure of the date because he did not have a car so she, along with her husband, and two of her other children, picked him up after work and then went to Escondido where they purchased an airline ticket from a travel agency, and then went to a Taco Bell. She had receipts from Taco Bell showing they were at the Taco Bell at about 7:16 p.m. They did more shopping in Escondido and returned home to Temecula at about 10:00 p.m. After they returned home, defendant did not leave the house again.

Defendant's mother identified the item in the photograph (thought to be a necklace) as a rosary, and stated defendant did not wear a rosary around his neck.

An expert testified that eyewitness identification following a stressful event is fraught with problems relating to unreliability.[35]

### d. Proceedings Below

Defendant was charged with two counts of attempted robbery (§§ 664 & 211), one count of active participation in a criminal street gang (§ 186.22, subd. (a)), and one count of assault with a firearm (§ 245, subd. (a)(2)). It was further alleged that defendant

8

personally used a firearm in the commission of the attempted robberies (§ 12022.53, subd. (b)).

At trial, both Shuler and Franklin positively identified defendant as the person who used the gun in the attempt to rob them.  He was convicted of all counts and sentenced to an aggregate term of 13 years in state prison.  Defendant appealed.

### DISCUSSION

1. **Denial of Defendant's Severance Motion Did Not Prejudice His Right to a Fair Trial.**

At the inception of the trial, defendant filed a motion entitled "Motion to Sever Gang Charge (Penal Code § 954)," to sever the charge of active participation in a criminal street gang (count 3) from the remaining counts.  During in limine proceedings, defense counsel conceded that bifurcation was inappropriate, and that this was a severance matter.  However, counsel argued that separate trials might not be necessary if the court were interested in trying something new and different, such as bifurcation.  The trial court denied the motion   On appeal, defendant argues that the court violated defendant's State and Federal Constitutional rights to Due Process of Law by denying bifurcation.  We disagree.

Pursuant to section 954, the People are permitted to join counts if they arose out of a single course of conduct or were connected in their commission.  A party seeking severance is required to clearly establish that there is substantial danger of prejudice

---

*[footnote continued from previous page]*

**35**  Because defendant does not challenge the sufficiency of the evidence to

*[footnote continued on next page]*

requiring that the charges be separately tried. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1050; *People v. Bean* (1988) 46 Cal.3d 919, 938 (*Bean*).) On appeal, an order denying a motion to sever counts is reviewed for abuse of discretion. (*People v. Jones* (2013) 57 Cal.4th 899, 925, citing *People v. Vines* (2011) 51 Cal.4th 830, 855.)

Joint trials have long been prescribed—and broadly allowed—by the Legislature's enactment of section 954. (*People v. Soper* (2009) 45 Cal.4th 759, 771 (*Soper*).) The purpose underlying this statute is clear: a joint trial "ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials." (*Frank v. Superior Court* (1989) 48 Cal.3d 632, 639.) A unitary trial requires a single courtroom, judge, and court attachés. Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried. (*Bean, supra,* 46 Cal. 3d at p. 940.)

In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process, promoting judicial efficiency. (*Bean, supra*, 46 Cal.3d at pp. 939–940; see also, e.g., *People v. Geier* (2007) 41 Cal.4th 555, 578; *People v. Ochoa* (1998) 19 Cal.4th 353, 409; *People v. Mason* (1991) 52 Cal.3d 909, 935.) For these and related reasons, consolidation or joinder of charged offenses is the course of action preferred by the law. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220.) When the statutory requirements of joinder are met, a defendant

---

*[footnote continued from previous page]*
support his convictions, it is unnecessary to give a detailed account.

must make a clear showing of prejudice to establish an abuse of discretion by the trial court.  (*People v. Marshall* (1997) 15 Cal.4th 1, 27 (*Marshall*).)

### a.  A Substantive Gang Offense Cannot Be "Bifurcated."

Although he conceded at trial that severance was the appropriate procedure for culling separate counts from trial, defendant asserts the court erred in failing to bifurcate the gang count from the remaining counts.  He cites decisional authorities involving severance of counts (*People v. Hernandez* (2004) 33 Cal.4th 1040; *Price v. Price* (1991) 1 Cal.4th 324; *People v. Balderas* (1985) 41 Cal.3d 144; *People v. Grant* (2003) 113 Cal.App.4th 579), and other authorities involving bifurcation of issues [such as sanity defenses, or prior convictions in criminal cases, or damages in civil trials] or allegations. (Citing *People v. Calderon* (1994) 9 Cal.4th 69 [prior convictions]; *People v. Cline* (1998) 60 Cal.App.4th 1327 (*Cline*) [prior convictions]; Fed. Rules of Civ. Proc., rule 42(b)[36].)  However, he cites no authority imposing a duty on a trial court to "bifurcate" a substantive count, the denial of which would give rise to a Due Process violation.

Pursuant to Penal Code section 1044, a trial court has authority to bifurcate the trial of a gang enhancement from the trial of guilt.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 (*Hernandez*).)  Bifurcation of enhancements or prior conviction allegations is a matter within the trial court's discretion.  (*Cline, supra,* 60 Cal.App.4th at p. 1333.)  However, in the context of severing charged offenses, additional factors favor joinder, where trial of the counts together avoids the increased expenditure of funds and

11

judicial resources which may result if the charges were tried in two or more separate trials.  (*Hernandez, supra,* at p. 1050.)

The language referring to the "context of severing charged offenses," as used by the California Supreme Court in *Hernandez,* supports the trial court's concern that severance of the counts would entail an entirely separate trial by a different jury, as opposed to a deferred issue.  None of the authorities argued by defendant suggest that a different procedure would be authorized, particularly where the language of Penal Code section 954 refers to "order[ing] that the different offenses or counts set forth in the accusatory pleading *be tried separately . . . .*"  [Italics added.]  By definition, a motion to sever means a motion for separate trials.

On appeal, defendant argues, without authority, that the trial court *could* have followed the same procedure as bifurcation of a gang enhancement.  However, whether or not a trial court "could" have done something does not establish that the court "should" have done so, or that a trial was rendered fundamentally unfair for its failure to do so.  At trial, defendant suggested that the trial court try something new and different by bifurcating a substantive count, which he conceded was more appropriately a severance matter.  This suggestion was based on the assumption that the gang count could just be tried after the verdict on the attempted robberies, much like a gang

_____

*[footnote continued from previous page]*
**36**  In state court, bifurcation is governed by Code of Civil Procedure, sections 597-598.

enhancement or a prior conviction allegation.  However, rejecting such a suggestion is not reversible error, and does not render a trial fundamentally unfair.

Absent any authority for "bifurcating" separate counts, the trial court's denial cannot be viewed as a denial of due process.  The trial court addressed this argument by observing that it had not seen any cases authorizing bifurcation of a substantive charge of Penal Code section 186.22, subdivision (a).  Neither have we.

**b.  The Court Properly Denied the Defense Motion for Severance.**

In determining whether a trial court abused its discretion in denying a motion to sever properly joined charges, we consider the record before the court when it made its ruling.  (*Soper, supra,* 45 Cal.4th at p. 774, quoting *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220.)  The pertinent factors include: (1) would the evidence of the crimes be cross-admissible in separate trials; (2) are some of the charges unusually likely to inflame the jury against the defendant; (3) has a weak case been joined with a strong case or another weak case so that the total evidence on the joined charges may alter the outcome of some or all of the charged offenses; and (4) is any one of the charges a death penalty offense, or does joinder of the charges convert the matter into a capital offense. (*Marshall, supra,* 15 Cal.4th at pp. 27-28.)  Because this case does not involve a capital offense, we do not need to analyze that factor.

**1.  Cross-admissibility**

We first consider whether the evidence of the separate offenses would have been cross-admissible if the offenses had been separately tried.  (*People v. Thomas* (2012) 53 Cal.4th 771, 798.)  The first step in assessing whether a combined trial would have been

13

prejudicial is to determine whether evidence on each of the joined charges would have been admissible, under Evidence Code section 1101, subdivision (b), in separate trials on the others; if so, any inference of prejudice is dispelled. (*People v. Carter* (2005) 36 Cal.4th 1114, 1154.) Cross-admissibility suffices to negate prejudice, but it is not essential for that purpose. (*Ibid.*)

Section 954 authorizes joinder for offenses connected together in their commission. This requirement may be satisfied even though the offenses charged do not relate to the same transaction and were committed at different times and places against different victims. (*Alcala v. Superior Court, supra,* 43 Cal.4th at pp. 1205, 1218.) The intent or motivation with which different acts are committed can qualify as a common element of substantial importance in their commission and establish that they were connected together in their commission. (*Id.,* at p. 1219.) Thus, offenses "'committed at different times and places against different victims are nevertheless "connected together in their commission" if they are linked by a "'common element of substantial importance.'" [Citations.]' [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 160.)

Here, the attempted robberies were connected together with the gang count in their commission because, according to the prosecution theory, the attempted robberies represented "work" being put in by defendant to further the criminal purposes of the gang. The elements of active participation in a criminal street gang include proof that the defendant did an act that "promotes, furthers, or assists in any felonious criminal conduct by members of that gang." (§ 186.22, subd. (a); *People v. Rodriguez* (2012) 55 Cal.4th

14

1125, 1132.) The prosecution relied on the attempted robbery counts to prove the defendant's active participation which furthered felonious criminal conduct by members of the Old Town Trece. The gang expert testified that robbery and assault crimes were some of the primary activities of the gang.

Further, defendant acknowledges that gang evidence is admissible where it is relevant to issues such as motive and intent. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1369.) He also acknowledges that if the gang evidence is sufficiently relevant to the charged offenses, neither exclusion nor bifurcation is required, even if the evidence would be inadmissible under Evidence Code section 352, citing *Hernandez, supra,* 33 Cal.4th at pp. 1049-1050.

Because the People's theory was that the attempted robberies constituted the affirmative act committed by the defendant to further criminal conduct of the gang, the evidence was relevant to motive and intent. Thus, even if the crimes had been severed from the gang offense, evidence of the same crimes would have to be offered in a separate trial on the gang count to show the nature of the "felonious criminal conduct" which defendant was alleged to have willfully promoted, furthered or assisted, within the meaning of section 186.22, subdivision (a).

## 2. Certain Charges Likely to Inflame the Jury.

Next we consider whether some of the gang charge was unusually likely to inflame the jury against defendant. The burden of demonstrating that consolidation or denial of severance was a prejudicial abuse of discretion is upon him who asserts it; prejudice must be proved, and a bald assertion of prejudice is not enough. (*People v.*

*Balderas* (1985) 41 Cal.3d 144, 171 [severance of counts involving one victim from those involving another].)  Defendant does not point to any particularly inflammatory evidence other than "the usual litany of violent criminal acts committed by people other than [defendant]."

The "litany" referred to in the opening brief was the expert's generic testimony about gangs, including tattoos (which defendant also had), how persons become members, how gang members prove their allegiance, how they maintain the respect of other gang members, how Old Town Trece pays respect to the Mexican Mafia, four predicate crimes committed by other gang members (reduced from seven proffered predicates).  The only gang evidence linked specifically to defendant related to his tattoos, his field interview contacts with police in the presence of gang members, and the expert's opinion that defendant was a member of Old Town Trece based on his associations with known gang members.

The gang evidence itself was not inflammatory.  There was no reference to the facts of any of the predicate crimes, no mention of excessively violent predicate crimes, and no introduction of irrelevant, gratuitous inflammatory evidence relating to gangs. (See, *People v. Albarran* (2007) 149 Cal.App.4th 214, 226-228 [references to threats to kill police officers and descriptions of criminal activities by other gang members not related to the underlying charges or the gang allegation].)  None of the evidence admitted in this case was particularly inflammatory, especially in light of the fact that Old Town Trece's primary activities, as described by the expert, do not include any particularly

16

inflammatory crimes. We conclude the gang evidence was not so inflammatory that severance was required.

### 3. Joinder of a Weak Charge with a Strong One.

Next, we consider whether a weak case has been joined with a strong case. In this respect, defendant points to the fact that the eyewitness identification evidence relating to the attempted robbery counts was notoriously weak. As between any two charges, it is always possible to point to individual aspects of one case and argue that one is stronger than the other. A mere imbalance in the evidence will not indicate a risk of prejudicial spillover effect, militating against the benefits of joinder and warranting severance of properly joined charges. (*Soper, supra,* 45 Cal.4th at p. 781.) The real question is: how likely is the spillover evidence to influence the jury and how susceptible is the charge to such influence? (*People v. Earle* (2009) 172 Cal.App.4th 372, 388.)

Defendant has not carried his burden of establishing that the spillover evidence of defendant's gang membership influenced the jury. Although the identification of defendant as the robber was a weakness in the early stages of the prosecution's case, Shuler and Franklin positively identified him at trial. Further, there was other evidence linking him to the crime which would have supported the conviction even in the absence of the gang evidence. Franklin was familiar with the female who participated in the attempted robbery and saw that person after the crime, in the company of defendant, who was wearing the same black hoodie worn by the person who attempted to rob them.

17

After this information was reported to investigators, a search warrant was issued for defendant's residence where the gun was found in the cushions of a couch in the garage. Shuler identified that gun as the same one used in the attempted robbery.

Even without the gang evidence, there was substantial evidence linking defendant to the attempted robberies, and it is not likely a different result would have been obtained. The jury was free to accept Clayton's and Dawn's in court identification and to reject the defense eyewitness identification expert's opinion. (See *People v. Combs* (2004) 34 Cal.4th 821, 851, citing *People v. Johnson* (1992) 3 Cal.4th 1183, 1231-1232 [jury remained free to reject Dr. Loftus's testimony although it was uncontradicted].) Given the preference and authority for joinder of counts where evidence is cross-admissible, and the absence of authority allowing bifurcation of substantive counts, the trial court properly exercised its discretion to deny the severance motion.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ          <br>P. J.

We concur:

HOLLENHORST       
            J.

McKINSTER        
            J.

18