Filed 7/8/22 P. v. O'Brien CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074516 |
| v. | (Super. Ct. No. FWV19001320) |
| MICHAEL PATRICK O'BRIEN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Ingrid Adamson Uhler, Judge. Affirmed in part, vacated in part, and remanded.

Jean Ballantine under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Adrianne S. Denault and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Michael Patrick O'Brien shot and killed his ex-girlfriend's fiancé, Rudy Areyan. A jury convicted defendant of first degree murder (Pen. Code, § 187, subd. (a))[1] and found true the allegation that he discharged a firearm, causing great bodily injury or death, in the commission of the crime (§ 12022.53, subd. (d)). The trial court found that defendant had a prior conviction that qualified as both a serious prior felony (§ 667, subd. (a)) and a strike prior (§ 667, subds. (b)-(i)). The trial court sentenced defendant to 75 years to life, consisting of an indeterminate term of 25 years to life for the murder, doubled for defendant's prior strike conviction, plus 25 years for the firearm enhancement.

On appeal, defendant argues: (1) substantial evidence does not support the jury's verdict; (2) the trial court erroneously instructed the jury with a flight instruction; (3) the trial court erroneously instructed the jury that it was not required to unanimously find defendant guilty under one of the prosecution's two theories of first degree murder; and (4) remand is necessary to allow the trial court to reduce or modify the firearm enhancement. We reject defendant's contentions and affirm the judgment.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

## II.

## FACTUAL BACKGROUND

Defendant had a son with his ex-girlfriend, Desseray Mariscal. Shortly after they broke up, Mariscal began a relationship with the victim, Rudy Areyan.

Mariscal and Areyan got into an argument when they were doing laundry together at a laundromat. Mariscal left the laundromat with her son in her car and told Areyan that she needed to "cool off." Areyan followed Mariscal in his car as she drove away. Mariscal texted him, telling him to go away, but he continued following her.

While driving, Mariscal called defendant and told him about the situation. Defendant was concerned about his son and told Mariscal to meet him where he was. He told Mariscal that he would "deal with it." Mariscal drove to where defendant was located.

The evidence about what happened next is conflicting. According to Mariscal, when she arrived at defendant's location, defendant was outside waiting for her and Areyan, who was still following her. Mariscal and Areyan then parked, and Areyan got out of his car and walked toward defendant. But, according to an eye witness, Mariscal was following Areyan when he parked. After he parked, defendant got out of the passenger seat of Mariscal's car and walked toward Areyan.

It is undisputed, however, that when Areyan approached defendant, defendant pulled out a gun and shot Areyan in the top of the head. Areyan's wounds were consistent with being shot while bending over and facing defendant. Defendant then ran to Mariscal's car, got inside, and Mariscal drove away and dropped him off near the freeway.

III.

DISCUSSION

A. *Substantial Evidence Supports Defendant's Conviction for First Degree Murder*

The People argued defendant was guilty of first degree murder under two alternate theories: murder by premeditation and deliberation and murder by lying in wait. Defendant contends there is insufficient evidence that he committed first degree murder under either theory. We disagree.

1. *Applicable Law and Standard of Review*

First degree murder is the "willful, deliberate, and premeditated" killing of another human being with malice aforethought. (§§ 187, subd. (a), 189.) Evidence sufficient to support "a finding of premeditation and deliberation falls into three basic categories: (1) facts about how and what [the] defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury

4

could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; [and] (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)." (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27.)

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

5

"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) We may reverse a conviction for a lack of substantial evidence only if it appears """"that upon no hypothesis whatever is there sufficient substantial evidence""" to support the conviction. (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

2. *Analysis*

There is substantial evidence that defendant killed Ayeran with premeditation and deliberation. The jury heard evidence that defendant told Mariscal to drive where he was located after she told defendant that Ayeran was following her in his car. The jury also heard that defendant told Mariscal he would "deal with it" when Ayeran arrived. The jury also heard evidence from an eye witness that when Ayeran arrived, parked his car, and exited, he and defendant walked toward each other and defendant immediately shot him in the head. It was undisputed that defendant shot Areyan in the top of the head, which suggested that he did so while Areyan was bent over with his head facing defendant and thus he was in a vulnerable position when shot. Finally, defendant immediately fled the scene, which the jury could reasonably consider as evidence of his

guilt.  (See *People v. Ray* (1996) 13 Cal.4th 313, 344-354.)  On this record, the jury could reasonably conclude that defendant planned to kill Areyan, had a motive to kill him, and intended to do so after careful consideration.  Substantial evidence therefore supports the jury's finding that defendant premeditated and deliberated Ayeran's murder.

Because substantial evidence supports the jury's first degree murder conviction under a theory that he premeditated and deliberated the murder, we need not discuss whether there is substantial evidence that defendant committed the murder by lying in wait.  This is because "when a prosecutor argues two theories to the jury, one of which is factually sufficient and one of which is not, the conviction need not be reversed, because the reviewing court must assume that the jury based its conviction on the theory supported by the evidence."  (*People v. Seaton* (2001) 26 Cal.4th 598, 645.)

As we explained above, substantial evidence supports defendant's conviction for first degree murder under a premeditation and deliberation theory.  So even if there was insufficient evidence that defendant committed the murder by lying in wait, we must affirm the conviction "unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty *solely* on the unsupported theory."  (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130, italics added.)

There is no such indication in the record.  The jury's verdict stated only that it found defendant guilty of first degree murder.  Nothing in the record suggests that the jury convicted defendant *solely* on a lying-in-wait theory. (See *People v. Wear* (2020) 44 Cal.App.5th 1007, 1021 [juror note stating some jurors believed defendant was guilty on

7

invalid theory "affirmatively demonstrate[d]" that some jurors convicted defendant on an invalid theory].)

The only evidence about the jury's thought process comes from a question it asked the trial court during its deliberations. The jury asked, "[i]n reference to the 'lying in wait' (1st deg. murder), do all 3 elements need to be proven for it to be considering 'lying in wait'? Or, does it just need to be one of those elements?" The trial court instructed the jury that it had to find that the People proved all three elements beyond a reasonable doubt. This does not show that the jury convicted defendant solely on a lying-in-wait theory of first degree murder. If anything, the jury's question suggests the jury found that the People had not proven all three elements of lying-in-wait murder and thus the jury did not convict defendant on that theory.

In any event, substantial evidence supports defendant's conviction under a lying-in-wait theory of murder. First degree murder by lying in wait requires (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage. (*People v. Russell* (2010) 50 Cal.4th 1228, 1244.) Thus, lying in wait is "'the functional equivalent of proof of premeditation, deliberation and intent to kill.'" (*People v. Hardy* (1992) 2 Cal.4th 86, 162.) "The purpose of the watching and waiting element is to distinguish those cases in which a defendant acts insidiously from those in which he acts out of rash impulse." (*People v. Stevens* (2007) 41 Cal.4th 182, 202.)

Here, "the jury could reasonably conclude [that defendant] concealed [his] murderous intention and struck from a position of surprise and advantage, factors which are the hallmark of a murder by lying in wait." (*People v. Hardy*, *supra*, 2 Cal.4th at p. 164.) As to the first element for lying-in-wait murder, "[t]he concealment required for lying in wait 'is that which puts the defendant in a position of advantage, from which the factfinder can infer that lying-in-wait was part of the defendant's plan to take the victim by surprise. [Citation.] It is sufficient that a defendant's true intent and purpose were concealed by his actions or conduct. It is not required that he be literally concealed from view before he attacks the victim. [Citations.]' [Citations.]" (*People v. Webster* (1991) 54 Cal.3d 411, 448.) Although the relevant evidence was conflicting, all of it supports a finding that defendant acted with "a concealment of purpose." The jury heard evidence that defendant told Mariscal to drive where he was located and that he was either waiting outside when Mariscal and Areyan arrived or that he was in Mariscal's car just before confronting Areyan. There is no evidence in the record that defendant made it known that he had a gun on him. And the fact that Areyan "was generally aware of defendant's presence does not negate the element of concealment." (*Ibid*. see *People v. Poindexter* (2006) 144 Cal.App.4th 572, 586 [affirming lying-in-wait murder conviction when the defendant approached the victim holding a shotgun in plain view then shot the victim three times from a close proximity].)

As to the second element, "lying in wait need not continue for any particular period of time provided that its duration is substantial in the sense that it shows a state of mind equivalent to premeditation or deliberation." (*People v. Cage* (2015) 62 Cal.4th 256, 279.) The jury heard evidence that defendant told Mariscal to drive to his location about 20 minutes before the murder occurred. From this evidence, the jury could reasonably infer that defendant had sufficient time to premeditate and deliberate murdering Areyan. (See *People v. Mendoza* (2011) 52 Cal.4th 1056, 1073 [a few minutes of waiting is sufficient for lying in wait murder].)

As to the final element, it is undisputed defendant shot Areyan in the top of the head. This suggested that Areyan was bent over with his head facing defendant, and thus was not looking at defendant when defendant shot him. The jury could thus rationally find that defendant "struck from a position of surprise and advantage." (*People v. Hardy*, *supra*, 2 Cal.4th at p. 164.)

Because substantial evidence supports the jury's finding that defendant committed murder under both a premeditation and deliberation and lying-in-wait theory, we affirm defendant's conviction for first degree murder. (See *People v. Seaton*, *supra*, 26 Cal.4th at p. 645; *People v. Guiton*, *supra*, 4 Cal.4th at pp. 1129-1130.)

10

B. *Flight Instruction*

The trial court instructed the jury with CALCRIM No. 372, which provides in relevant part: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he or she was aware of his or her guilt. If you conclude that the defendant fled it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." Defendant contends the trial court erred in doing so. We disagree.

We first reject the People's argument that defendant forfeited the issue by failing to object to the instruction in the trial court. (*People v. Taylor* (2010) 48 Cal.4th 574, 630, fn. 13 [defendant did not forfeit argument that flight instruction was impermissibly argumentative by failing to object].)

In any event, the flight instruction was proper. "'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." [Citations.]'" (*People v. Leon* (2015) 61 Cal.4th 569, 607 (*Leon*).)

For instance, in *Leon*, the California Supreme Court held the trial court properly instructed the jury on flight when the defendant was charged with evading a police officer with willful disregard for safety and robbery murder. (*Leon*, *supra*, 61 Cal.4th at p. 607.) The court reasoned that the defendant's flight was relevant to his consciousness of guilt for both offenses. (*Ibid.*)

11

*Leon* controls here. Defendant's flight from the scene after shooting and killing Areyan was relevant to his consciousness of guilt for the first degree murder charge. The trial court therefore did not err in giving CALCRIM No. 372. (See *Leon*, *supra*, 61 Cal.4th at p. 607; see also *People v. Henry* (1937) 23 Cal.App.2d 155, 165 [jury instruction on flight proper because defendant's flight was relevant to defendant's consciousness of guilt].)

Finally, we disagree with defendant that CALCRIM No. 372 is "improperly argumentative," conflicts with section 1127c, lessened the prosecution's burden, undermined the presumption of defendant's innocence, or allowed the jury to find him guilty based on his flight from the crime scene. Courts have consistently rejected these arguments and held that CALCRIM No. 372 is properly given to the jury when, as here, there is substantial evidence that the defendant fled the scene of a crime. (See e.g., *People v. Paysinger* (2009) 174 Cal.App.4th 26, 30 [rejecting arguments that CALCRIM No. 372 undermines the presumption of innocence or lowers the prosecution's burden]; *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1158-1159 [rejecting argument that CALCRIM No. 372 allows jury to "presume[] the existence of" the defendant's guilt from his flight]; *People v. Price* (2017) 8 Cal.App.5th 409, 454 [rejecting arguments that CALCRIM No. 372 is "impermissibly argumentative" and conflicts with section 1127c].) We agree with these decisions and follow them here. As a result, we conclude the trial court did not err by instructing the jury with CALCRIM No. 372.

C. *Juror Unanimity*

As we explained above, The People argued defendant was guilty of first degree murder on two alternative theories: murder by premeditation and deliberation and murder by lying in wait. Defendant contends the trial court erroneously instructed the jury with CALCRIM No. 521, which told the jurors that they could convict defendant of first degree murder only if they unanimously found that he committed the offense, "[b]ut all of you do not need to agree on the same theory." Defendant contends this instruction was prejudicial error because it inaccurately stated the law and thus violated his due process rights under the federal and state constitutions. We disagree.

First, we disagree with the People that defendant forfeited his arguments on appeal related to CALCRIM No. 521 because he did not object to the instruction below. (See *People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 [defendant did not forfeit constitutional challenge to CALCRIM No. 521 by failing to object to the instruction].) When, as here, the defendant claims an instruction as incorrectly stating the law and violating his or her due process rights, "the claim . . . is not of the type that must be preserved by objection." (*Ibid*.)

Our Supreme Court's "long-standing rule" is that "juror unanimity regarding the theory of first degree murder is not required." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 496.)[2] Thus, "[b]ecause lying in wait and deliberate and premeditated

_____

[2] We disagree with defendant that *Alleyne v. United States* (2013) 570 U.S. 99 (*Alleyne*) and *Ramos v. Louisiana* (2020) ___ U.S. ___, 140 S.Ct. 1390 (*Ramos*), undermine this rule, which we are bound to follow. (*Auto Equity Sales, Inc. v. Superior*

*[footnote continued on next page]*

theories of murder are simply different means of committing the same crime, juror unanimity as to the theory underlying its guilty verdict is not required." (*People v. Russell*, *supra*, 50 Cal.4th at p. 1257.) The trial court therefore properly instructed the jury with CALCRIM No. 521.

D. *Firearm Enhancement*

Defendant contends that we must remand this case so that the trial court can exercise its discretion on whether to reduce or modify the 25-year firearm enhancement to an uncharged lesser included enhancement under section 12022.53. In our prior opinion, we rejected the argument and followed this court's decision in *People v. Yanez* (2020) 44 Cal.App.5th 452 (*Yanez*), which held that section 12022.53 "does not afford any" discretion to impose a lesser firearm enhancement. (*Yanez*, *supra*, at p. 460; June 22, 2021, E074516) [nonpub. opn.]) We therefore declined to remand this matter for resentencing. (June 22, 2021, E074516) [nonpub. opn.].)

---

*Court* (1962) 57 Cal.2d 450, 455.) *Alleyne* held that the jury—not the trial court—must find true beyond a reasonable doubt any fact that increases the mandatory minimum penalty for a crime. (*Alleyne*, *supra*, at p. 103.) It says nothing about whether a jury must unanimously agree on a first-degree murder theory. Nor does *Ramos*. *Ramos* held that the federal Constitution mandates that jury verdicts in criminal cases be unanimous, but California has long required that. (See *Ramos*, *supra*, at p. 1397; *People v. Russo* (2001) 25 Cal.4th 1124, 1132 ["In a criminal case, a jury verdict must be unanimous."].) "Given California's existing requirement of a unanimous verdict, the Supreme Court's decision [in *Ramos*] has no direct effect on California." (*People v. Wilson* (2020) 56 Cal.App.5th 128, 161 fn.17) *Alleyne* and *Ramos* thus do not support defendant's argument—which our Supreme Court "has repeatedly rejected"—that the jury must unanimously agree on a theory of first-degree murder before returning a guilty verdict for that crime. (*People v. Mora and Rangel*, *supra*, at p. 496.)

Our Supreme Court subsequently decided in *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), that trial courts do have the discretion to reduce a section 12022.53 firearm enhancement to a lesser included enhancement under that provision. Our Supreme Court therefore vacated this court's decision in *Yanez*, ordered the opinion depublished, and transferred the matter back with directions to reconsider the case in light of *Tirado*. (*People v. Yanez* (Apr. 20, 2022) __ P.3d __, 2022 WL 1180045, at *1.)

At sentencing, defendant urged the trial court to strike the firearm enhancement. After considering the aggravating and mitigating circumstances, the trial court found that "it would be a gross misuse of [its] discretion to strike the enhancement." The record thus shows that "the trial court clearly indicated when it originally sentenced . . . defendant that it would not . . . have *stricken* [the] firearm enhancement." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425, italics added.)

But that does not mean the trial court would not exercise its discretion to impose a lesser included firearm-use enhancement under section 12022.53, subdivisions (b) (10 years) or (c) (20 years). (See *Tirado*, *supra*, 12 Cal.5th at p. 700.) At the time of sentencing, it was unclear whether the trial court had discretion to impose either sentence in lieu of striking the enhancement or imposing a greater, charged firearm-use enhancement. *Tirado* confirms that the trial courts do have that discretion. (*Ibid.*) Because it is not clear from the record whether the trial court would impose a 10- or 20-year firearm-use enhancement instead of striking or imposing the 25-year enhancement, we remand for resentencing.

IV.

DISPOSITION

The conviction is affirmed and the sentence vacated. The matter is remanded for the trial court to exercise its discretion to determine whether to impose a lesser included firearm-use enhancement under section 12022.53, subdivisions (b) or (c) and resentence defendant accordingly. In all other respects, the judgment is confirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

SLOUGH
J.

FIELDS
J.